UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CRYSTAL M. MILAN,

                             Plaintiff,          **MEMORANDUM AND ORDER**

                         -against-              14-CV-2448 (SLT)

FRED WERTHEIMER, DENISE COSTANZA,
ZENOBIA PARKER; NEFREDIA COVINGTON;
and MARY DAVIS,

                             Defendants.
------------------------------------------------------------x
**TOWNES, United States District Judge:**

On March 19, 2014, plaintiff Crystal M. Milan ("Plaintiff" or "Ms. Milan"), proceeding *pro se*, commenced this action in the United States District Court for the Southern District of New York (the "SDNY") on behalf of herself and her four children: English, India, Asia and Beyoncé. The action was subsequently transferred to this Court which, by order dated July 2, 2014, and entered July 3, 2014 (the "Prior M&O"), granted Plaintiff's request to proceed *in forma pauperis*, dismissed the complaint, and granted leave to file an amended complaint within 30 days. Plaintiff has now filed an amended complaint dated July 30, 2014, but it fails to cure the deficiencies in the original complaint. Accordingly, the action is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B).

## *BACKGROUND*

Plaintiff's original complaint in this action is described in detail in the Prior M&O, familiarity with which is assumed. In a nutshell, that pleading alleged that Plaintiff's four children were removed from her care in 2004 following complaints by Plaintiff's mother, defendant Mary Davis. The original complaint named Davis and four others—Nefredia

Covington, Zenobia Parker, Denise Costanza, and Fred Wertheimer—as defendants, but did not indicate what actions or omissions by those defendants violated Plaintiff's constitutional or statutory rights. Rather, the complaint merely asserted that this Court had jurisdiction by virtue of violations of unspecified Constitutional rights.

The Prior M&O dismissed all claims purportedly made on behalf of Plaintiff's children on the ground that Plaintiff, who is not a lawyer, could not represent them. The remaining claims were dismissed for failure to state a claim, but Plaintiff was granted leave to file an amended complaint.

In early August 2014, Plaintiff filed five separate documents, each entitled "Amentment [sic] Complaint." One document (hereafter, the "Form") is a four-page form complaint which Plaintiff completed by hand and dated July 30, 2014. The caption on the first page of the Form lists Ms. Milan as the only plaintiff, but lists the same five defendants as the original complaint. The second document (the "Addendum") is a seven-page, double-sided, handwritten document which elaborated on allegations contained in the "Statement of Claim" section of the Form. The remaining three documents appear to be copies of (1) the order transferring this action from the SDNY to this Court; (2) the original complaint, slightly modified to correct spelling errors; and the Prior M&O.

## *The Factual Allegations in the Amended Complaint*

The following facts are drawn exclusively from the Form and Addendum, the allegations of which are assumed to be true for purposes of this Memorandum and Order. Plaintiff's

2

children were removed from her custody in 2004 (Addendum, p. 2A).[1] The children were placed with defendant Davis in Montgomery County, Pennsylvania, where they were assigned caseworkers. However, the Family Court of the City of New York, Law Guardians Denise Costanza and Fred Wertheimer, both New York lawyers; and the Seaman's Society for Children and Families, a Staten Island-based organization, continued to be involved in the case.

On September 30, 2004, Davis falsely told "the courts" that Plaintiff had left a telephone message in which she threatened to kill Davis (*id.*, p. 3B). According to Plaintiff, Davis lied in order to obtain an order of protection against Plaintiff, and then claimed that she could not accommodate Plaintiff's visitation requests because the order prevented Plaintiff from visiting her home (*id.*, p. 4A). As a result, Plaintiff was prevented from seeing her children for "a whole year" after their removal (*id.*). Davis also falsely told a Pennsylvania caseworker that Plaintiff did not want the children, while telling courts in New York that the children did not want to see Plaintiff (*id.*).

Because of Plaintiff's inability to visit the children, Pennsylvania caseworkers had the mistaken impression that Plaintiff was "parking" the children with her mother and "running the streets" (*id.*). For example, in November 2006, during her first visit with her children, Beyoncé's caseworker, Mr. Cole, allegedly told Plaintiff, "[A]fter you done ran [sic] the streets for a whole year, now your [sic] tired and want your kids back" (*id.*, p. 4B). Plaintiff, who had been working at a hospital emergency room before her children were removed and who was employed at the time of the conversation, attempted to tell Cole that he was mistaken (*id.*, pp.

---

[1] Since the Addendum consists of double-sided pages, this Court will refer to the front side of each page as "A" and the back side as "B." Thus, page 2A is the front side of the second page of the Addendum.

4B-5A). However, Cole did not believe Plaintiff and told her, "I think it's best for those children to remain in your mother['s] care" (*id.*, p. 5A (brackets added)). After some "back and forth," Cole told Plaintiff that she would never get her children back (*id.*).

Two other incidents occurred during the November 2006 visit. First, while Plaintiff was permitted to visit with her three daughters and to give them clothing and shoes, Plaintiff's son, English, was initially not present (*id.*, p. 5A). When Plaintiff inquired as to her son's whereabouts, Davis told Plaintiff that English had been told of Plaintiff's visit but did not want to see her (*id.*, pp. 5A-5B). That claim was disproven about a half-hour later, however, when English returned home and said that no one had told him of Plaintiff's visit (*id.*, p. 5B).

Second, Plaintiff's sister, India, offered Plaintiff a can of beer and attempted to induce Plaintiff to drink it in the presence of the children (*id.*, pp. 5B-6B). Plaintiff refused to accept the beer, asking, "India[,] why [do] you keep on asking me to have something to drink when you know that I am not sup[p]ose[d] to be drinking" (*id.*, p. 6B (brackets added)). Plaintiff subsequently noticed that there was another woman sitting behind her and, upon inquiring, learned that the woman was defendant Parker, another of Beyoncé's caseworkers (*id.*, pp. 6B-7A). Plaintiff was convinced that "[t]hey were trying to set [her] up" and asserts that Parker "has been trying to set [her] up ever[ ] since" (*id.*, p. 7A (brackets added)).

Plaintiff's complaint also contains specific allegations regarding events which took place in 2009. After a court appearance before Family Court Judge Arnold Lim on January 21, 2009, Plaintiff was apparently permitted more extensive visitation rights, including the right to have one or more of the children come to New York for overnight visits (*id.*, p. 1A). Pursuant to this order, Plaintiff had a one-day visit on January 30, 2009, and an overnight visit on February 14,

4

2009 (*id.*). However, on February 16, 2009, a caseworker from the Seaman's Society told Plaintiff that Davis had called a "hotline" on February 14, 2009, claiming that she witnessed Plaintiff twisting Beyoncé's wrist (*id.*). Davis expressed the view that it was "too dangerous for Beyoncé" to proceed with any future visits (*id.*).

On April 21, 2009, the Seaman's Society called Davis to arrange for Beyoncé to visit Plaintiff again. Although Judge Lim's order remained in effect, Davis claimed that defendant Costanza had told Davis not to bring Beyoncé to New York because there would not be any more visits (*id.*, pp. 1A-1B). According to Plaintiff, Costanza filed several proposed orders to show cause in an effort to have the visits stopped (Form, ¶ III(C)), including a proposed order filed on June 30, 2009 (Addendum, p. 1A). Although Costanza never succeeded in her legal efforts, she nonetheless had the Seaman's Society and "a few other people believing that Judge Lim stopped [the] visits" (Form, ¶ III(C)). Plaintiff asserts that Costanza succeeded in preventing Plaintiff from having "a visit in two straight years" (*id.*). It is unclear when that two-year period took place, though Plaintiff specifically alleges that it ended in October 2012, when one Tosha McKnight—who is variously described as either a judge or referee—noticed that Plaintiff was not receiving the visits which Judge Lim had ordered (Addendum, pp. 3A-3B).

Plaintiff continued to visit her children in Pennsylvania after April 21, 2009. Indeed, the Addendum alleges that Parker has been "constantly try[ing] to sabotage [Plaintiff's] visits with Beyoncé" since September 2009 by falsely claiming in her written reports that Beyoncé did not like to visit Plaintiff (*id.*, p. 1B (brackets added)). In addition, the pleading specifically alleges that Parker gave Beyoncé a "demonic stare" during Plaintiff's November 2009 visit with Beyoncé (*id.*).

5

At some point, Plaintiff sprained her right foot and/or ankle, causing her to develop carpal tunnel syndrome and tendinitis (Form, ¶ IV). Costanza continued to pretend that the judge's order required Plaintiff to travel to Pennsylvania, rather than permitting the children to visit her in New York (*id*). Plaintiff alleges that the constant traveling from New York to Pennsylvania eventually left her disabled and necessitated surgery (*id.*). At the same time, Costanza falsely claimed that she was having routine visits with Beyoncé at her office in New York (Form, ¶ III(C)).

On May 19, 2011, Plaintiff informed Family Court Judge Ilana Gruebel that her stepfather was residing in her mother's home. (Addendum, p. 2A). Plaintiff told the judge that her stepfather had molested her as a child, and expressed concern that he would molest her children as well (*id.*). However, Costanza responded by "making jokes" about Plaintiff's concerns, telling Judge Gruebel that she should order Plaintiff to "take therapy sessions all over again" and order the therapist to prescribe medication (*id.*). Although Judge Gruebel called the lawyers to a sidebar, where she admonished Costanza and criticized her handling of the case, Costanza apparently did not take the admonition seriously (*id.*, pp. 2B-3A). Plaintiff implies that Costanza was taking orders from Davis, rather than the judge, by alleging that at "[e]very court date" thereafter, her mother was signaling Costanza "on what and what not to say"(*id.*, p. 3A).

The Amended Complaint alleges that defendants' actions deprived Plaintiff of her Constitutional rights and caused "emotional suffering, mental distress and alienation" (Form, ¶ II(B)). Plaintiff requests "restitution" for her "pain and suffering" in the amount of $1 million for "every extra year" that each child was taken from her (*id.*). Since the four children were taken from her for 10 years, Plaintiff seeks a total of $40 million (*id.*).

# DISCUSSION

## A. Standard of Review

Title 28, section 1915(e)(2), of the United States Code provides that "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted . . . ." To state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In evaluating whether a pleading states a claim for relief, "a court must accept as true all factual allegations contained in a complaint but need not accept legal conclusions." *Halebian v. Berv*, 590 F.3d 195, 203 (2d Cir. 2009) (internal quotation marks and brackets omitted) (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," and to nudge a plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

*Pro se* complaints, like other pleadings, must contain sufficient factual allegations to meet the plausibility standard. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "[a] document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S.

97,106 (1976)). Thus, a court must read a *pro se* complaint with "special solicitude," *Ruotolo* v. *I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994), and must interpret it to raise the strongest claims it suggests. *See Triestman* v. *Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *See Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Gomez* v. *USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999).

## B. Constitutional Claims

As the Court explained in the Prior M&O, Plaintiff's claims that her Constitutional rights were violated may be cognizable under 42 U.S.C. § 1983. Parents have a fundamental liberty interest in the care, custody, and control of their children. *See Troxel* v. *Granville*, 530 U.S. 57, 65 (2000); *Kia P.* v. *Mcintyre*, 235 F.3d 749 (2d Cir. 2000); *Tenenbaum* v. *Williams*, 193 F.3d 592, 599 (2d Cir. 1999). This interest is protected by both the procedural and substantive components of due process under the Fourteenth Amendment.

In order to maintain an action under § 1983, however, a plaintiff must not only allege that the defendants' conduct deprived the plaintiff of "rights, privileges, or immunities secured by the Constitution or laws of the United States," but also that the conduct complained of was "committed by a person acting under color of state law." *Pitchell* v. *Callan*, 13 F.3d 545, 547 (2d Cir. 1994). As the Supreme Court has held, "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co.* v. *Sullivan*, 526 U.S. 40, 50 (1999) (quotations omitted).

Plaintiff's claims against defendants Davis, Wertheimer, and Costanza must be dismissed, as these defendants are not alleged to be state actors or to be working under color of

state law. Davis is identified only as Plaintiff's mother, with no allegation of state authority. Wertheimer and Costanza are both identified as law guardians, presumably appointed to represent the interests of Plaintiff's children. "[A]lthough appointed by the state, an attorney for the children or law guardian is not a state actor because he or she must exercise independent professional judgment on behalf of the clients they represent." *Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011), *aff'd*, 485 Fed. App'x 500 (2d Cir. 2012), *cert. denied*, 133 S.Ct. 652 (2012); *see also Storck v. Suffolk Cnty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 941 (E.D.N.Y. 1999) ("Neither the fact that the law guardians were appointed by a New York State court nor the fact that they were paid by state funds is sufficient to render these individuals state actors."). Accordingly, all Section 1983 claims against these defendants must be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B).

In contrast, Nefredia Covington and Zenobia Parker appear to be state actors. Although Covington is mentioned only in the caption, and not in the body, of the Amended Complaint, the original complaint alleged that she was employed by the New York City Administration for Children's Services ("ACS"), an agency of the City of New York. *See, e.g., Graham v. City of New York*, 869 F. Supp. 2d 337, 348 (E.D.N.Y. 2012). Similarly, while the Amended Complaint alleges only that Parker is a "caseworker," this Court will take judicial notice of the fact that the address provided for Parker is the address of the Montgomery County Office of Children and Youth. *See* http://www.montcopa.org/index.aspx?nid=149. However, as explained below, Plaintiff's § 1983 claims against these defendants are time-barred.

### C. *Statute of Limitations*

In actions pursuant to 42 U.S.C. § 1983, "the applicable limitations period is found in the 'general or residual [state] statute [of limitations] for personal injury actions.'" *Pearl v. City of*

*Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)) (brackets added in *Pearl*). In New York, that limitations period is three years. *Id.* (citing N.Y. C.P.L.R. § 214(5)). Moreover, in section 1983 actions, courts "borrow not only a state's limitations period but also its tolling rules, unless applying the state's tolling rules would defeat the goals of the federal statute at issue." *Id.* at 80 (internal quotations and citations omitted).

Generally, a § 1983 claim accrues "when the plaintiff knows or has reason to know of the harm" he or she has suffered. *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001) (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)). The statute of limitations may be tolled in exceptional circumstances. Like the length of the limitations period, equitable tolling is governed by state tolling provisions. *Wallace v. Kato*, 549 U.S. 384, 394 (2007). Under New York law, the doctrines of equitable tolling or equitable estoppel "may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Doe v. Holy See (State of Vatican City)*, 17 A.D.3d 793, 794, 793 N.Y.S.2d 565, 568 (N.Y. App. Div. 2005) (internal quotations omitted). "Due diligence on the part of the plaintiff in bringing an action is an essential element of . . . equitable estoppel." *Id.*, 793 N.Y.S.2d at 569 (quotations omitted).

The acts and omissions alleged in the Amended Complaint almost all pre-date 2011. As noted above, the body of the Amended Complaint contains no allegations concerning Covington. Even assuming that Plaintiff meant to name Covington as a defendant in the Amended Complaint and to re-allege the facts and claims raised against Covington in the original complaint, the acts attributed to Covington all occurred in 2004. Similarly, the only specific allegations concerning Parker relate to events which took place in or before November 2009. To

be sure, the Amended Complaint accuses Parker of "trying to set [her] up" ever since November 2006 (Addendum, p. 7A (brackets added)) and of attempting to sabotage her visits with Beyoncé since September 2009 by falsely reporting that Beyoncé did not like the visits. However, the pleading does not suggest that Parker's actions prevented Plaintiff from visiting Beyoncé. To the contrary, the Amended Complaint specifically alleges that it was Costanza's actions which prevented Plaintiff from having "a visit for two straight years" (Form, ¶ III(C)). As already discussed, Costanza is not amenable to suit in federal court under Section 1983.

## CONCLUSION

The Amended Complaint fails to cure the deficiencies in the original complaint. The claims against defendants Wertheimer, Costanza, and Davis are dismissed for failure to state a claim. The claims against defendants Covington and Parker are dismissed as time-barred. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

s/Sandra L. Townes

/SANDRA L. TOWNES
United States District Judge

Dated: August 28, 2014
      Brooklyn, New York